# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**FILED**

October 20, 2015

Lyle W. Cayce
Clerk

No. 14-20778

MARY KING-WHITE; A. W.,

      Plaintiffs - Appellants

v.

HUMBLE INDEPENDENT SCHOOL DISTRICT; AMANDA MICHELLE FEENSTRA; GUY SCONZO; CHARLES NED; JUAN MELENDEZ; TAMMY MCHALE; CRAIG STOWERS; ALICIA NARCISSE,

      Defendants - Appellees

Appeal from the United States District Court
for the Southern District of Texas

Before BENAVIDES, CLEMENT, and HIGGINSON, Circuit Judges.

FORTUNATO P. BENAVIDES, Circuit Judge:

In this case we determine the Texas statute of limitations that applies to Title IX and § 1983 claims involving sexual abuse. Plaintiffs-Appellants Mary King-White and her daughter, A.W. (collectively, "Plaintiffs"), appeal the 12(b)(6) dismissal of their Title IX and § 1983 claims against Humble Independent School District ("HISD") and several of its employees. Plaintiffs' claims stem from the alleged sexual molestation of A.W. by her teacher, Amanda Feenstra ("Feenstra"). Feenstra was hired as a dance instructor at Humble High School in 2009, and Plaintiffs allege that Feenstra sexually abused A.W. continuously from 2009 through 2011 while A.W. was her student.

No. 14-20778

Feenstra pled guilty to a criminal charge of improper relationship with a student in 2013, and Plaintiffs then brought the instant lawsuit against Feenstra, HISD, and various HISD administrators/employees (the "School Officials") in their official and individual capacities. Plaintiffs asserted Title IX and § 1983 claims—as well as several state-law causes of action—against HISD and the School Officials, alleging that they knew about Feenstra's abuse and failed to stop it. HISD and the School Officials moved to dismiss the Title IX and § 1983 claims as untimely, among other things, and the district court granted their motions. Finding the claims barred by the relevant statute of limitations, we now AFFIRM.

## I. BACKGROUND

Plaintiffs allege that Feenstra used her position as A.W.'s dance instructor at Humble High School to establish a domineering, sexually abusive relationship with A.W. Plaintiffs claim that soon after Feenstra was hired by HISD in 2009, she began meeting with A.W. frequently outside of school. According to Plaintiffs, these meetings led to inappropriate sexual advances and ultimately, beginning in the spring of 2009 when A.W. was 16 years old, to repeated instances of sexual abuse. It is also undisputed that at some point, with the permission of King-White, A.W. moved into Feenstra's home. Plaintiffs contend that Feenstra continued to abuse A.W., both at home and on school premises, until A.W.'s graduation from Humble High School in 2011.

Plaintiffs additionally claim that the School Officials named in the complaint (HISD's superintendent and Humble High School's principal, vice principals, and counselor) had knowledge of Feenstra's abuse, both because (1) inappropriate touching and other troubling behavior occurred in plain view, and (2) a number of parents, including King-White herself, complained to administrators about the relationship between Feenstra and A.W. Despite these indications of abuse, Plaintiffs assert that the School Officials did not

2

scrutinize Feenstra or limit her interactions with A.W. Plaintiffs also allude to certain HISD "policies" that ostensibly allowed Feenstra's abuse to continue, including the endorsement of off-campus teacher–student interactions and unchaperoned school trips.

Sometime after graduation, A.W. told a former teacher about Feenstra's abuse, and the teacher reported Feenstra to school authorities. Around March of 2013, Feenstra was arrested and charged with a felony of improper relationship with a student. On October 23, 2013, Feenstra pled guilty and was sentenced to ten years of deferred adjudication and probation.

Plaintiffs filed the present suit on December 4, 2013, alleging violations of their civil and constitutional rights under 42 U.S.C. § 1983 and Title IX of the Education Act of 1972. Plaintiffs also asserted various tort claims under Texas state law. Named as defendants in the original complaint were Feenstra, HISD, and the School Officials. HISD and the School Officials moved to dismiss Plaintiffs' claims against them pursuant to Federal Rule of Civil Procedure 12(b)(6), arguing that the federal claims were time-barred, the pleadings were insufficient, and the individual Defendants were entitled to qualified immunity.[1] The district court granted the motions to dismiss, concluding (as relevant to this appeal) that the § 1983 and Title IX claims were untimely. Plaintiffs now argue that the district court erred in determining that these claims were time-barred.[2] Plaintiffs contend that, rather than applying Texas's

---

[1] Feenstra did not join in these motions and is not a party to the present appeal. Feenstra later moved for partial summary judgment and judgment on the pleadings as to the claims asserted against her. On July 27, 2015, the district court granted Feenstra's motion for judgment on the pleadings as to all federal claims, declined to exercise supplemental jurisdiction over the state law claims, and denied as moot Feenstra's motion for partial summary judgment. Plaintiffs have separately appealed that order.

[2] While the district court dismissed all claims against HISD and the School Officials, including the state-law tort claims, Plaintiffs have only appealed the dismissal of the Title IX and § 1983 claims. We thus limit our review to those claims.

No. 14-20778

general two-year personal injury statute of limitations, the district court should have applied the five-year exception for sexual assault claims. Plaintiffs also argue that (1) the district court incorrectly determined accrual of the federal claims for purposes of calculating whether the limitations period had expired, and (2) the court abused its discretion in refusing to apply certain equitable tolling principles. Finally, Plaintiffs contest the district court's rulings with respect to complaint sufficiency, qualified immunity, and leave to amend the complaint.

We conclude that the district court did not err in finding that Plaintiffs' Title IX and § 1983 claims are time-barred. Accordingly, we do not reach the remaining issues.

## II. STANDARD OF REVIEW

"A statute of limitations may support dismissal under Rule 12(b)(6) where it is evident from the plaintiff's pleadings that the action is barred and the pleadings fail to raise some basis for tolling or the like." *Jones v. Alcoa, Inc.*, 339 F.3d 359, 366 (5th Cir. 2003). We review a district court's dismissal under Rule 12(b)(6) *de novo*, "accepting all well-pleaded facts as true and viewing those facts in the light most favorable to the plaintiffs." *Gonzalez v. Kay*, 577 F.3d 600, 603 (5th Cir. 2009) (quoting *Dorsey v. Portfolio Equities, Inc.*, 540 F.3d 333, 338 (5th Cir. 2008)). When the district court declines to "exercise its equitable discretion to toll," however, "we review [that] decision[] on the pleadings only for abuse of discretion." *Teemac v. Henderson*, 298 F.3d 452, 456 (5th Cir. 2002). In conducting our review, "we assume the pleaded facts as true, and we will remand if the plaintiff has pleaded facts that justify equitable tolling." *Id.*

## III. DISCUSSION

*A. Selecting the Appropriate Statute of Limitations*

4

No. 14-20778

When a federal statute does not contain a limitations period (as is the case for Title IX and § 1983), the settled practice is to borrow an "appropriate" statute of limitations from state law.[3] *See Goodman v. Lukens Steel Co.*, 482 U.S. 656, 660 (1987), *partially superseded by statute as stated in Jones v. R.R. Donnelley & Sons Co.*, 541 U.S. 369, 371 (2004); *see also* 42 U.S.C. § 1988. The district court in this case dismissed Plaintiffs' Title IX and § 1983 claims after determining that both claims were governed by Texas's two-year statute of limitations for personal injury actions, which is set out in Section 16.003 of the Texas Civil Practice and Remedies Code. Section 16.003 states in relevant part:

> Except as provided by Sections 16.010, 16.0031, and 16.0045, a person must bring suit for trespass for injury to the estate or to the property of another, conversion of personal property, taking or detaining the personal property of another, personal injury, forcible entry and detainer, and forcible detainer not later than two years after the day the cause of action accrues.

TEX. CIV. PRAC. & REM. CODE ANN. § 16.003(a). Reference to Section 16.0045 of the statute, however, reveals that causes of action stemming from sexual assault are governed by a longer, five-year limitations period.[4] *See id.* § 16.0045(b). Plaintiffs argue on appeal that, because their Title IX and § 1983 claims are based on the sexual abuse of A.W., the district court should have applied the longer limitations period from Section 16.0045 to those claims. We disagree.

---

[3] Of course, this rule only applies to statutes enacted prior to passage of 28 U.S.C. § 1658, which now governs in such circumstances. *See* 28 U.S.C. § 1658(a); *Jones v. R.R. Donnelley & Sons Co.*, 541 U.S. 369, 371 (2004).

[4] Section 16.0045 was amended, effective September 1, 2015, to extend the limitations period from five to fifteen years for claims involving sexual assault or abuse of a child. TEX. CIV. PRAC. & REM. CODE ANN. § 16.0045(a) (West Supp. 2015). Plaintiffs filed their briefs before the amendment took effect, however, when the period was five years for any claim based on sexual assault. In any event, the amendment does not change our analysis, as we conclude that the provision does not apply.

No. 14-20778

In *Wilson v. Garcia*, the Supreme Court held that § 1983 claims are subject to state personal injury statutes of limitations. 471 U.S. 261, 280 (1985), *partially superseded by statute as stated in Jones*, 541 U.S. at 377–80. Then, in *Owens v. Okure*, the Supreme Court refined *Wilson* and held that "where state law provides multiple statutes of limitations for personal injury actions, courts considering § 1983 claims should borrow the general or residual statute for personal injury actions." 488 U.S. 235, 249–50 (1989). Following *Wilson* and *Owens*, we have recognized that Texas's two-year statute of limitations for personal injury actions applies to § 1983 claims filed in the state. *See Piotrowski v. City of Houston*, 51 F.3d 512, 515 n.5 (5th Cir. 1995). As a preliminary matter, we must now determine whether Title IX claims should be treated like § 1983 claims and governed by state statutes of limitations for personal injury actions. If so, we must address Plaintiffs' argument that properly applying the Texas personal injury statute to the claims in this case means applying the longer period from Section 16.0045 rather than the two-year period from Section 16.003.

1.  The Statute of Limitations Applicable to Title IX Claims

While this court has not yet considered the appropriate limitations period for Title IX claims, every other circuit to have considered the matter in a published opinion has concluded that Title IX is subject to the same limitations period as § 1983. *See, e.g.*, *Varnell v. Dora Consol. Sch. Dist.*, 756 F.3d 1208, 1212–13 (10th Cir. 2014); *Stanley v. Trs. of Cal. State Univ.*, 433 F.3d 1129, 1134 (9th Cir. 2006); *Egerdahl v. Hibbing Cmty. Coll.*, 72 F.3d 615, 618 (8th Cir. 1995). We now join our sister circuits and hold that Title IX should be treated like § 1983 for limitations purposes. We find the Eighth Circuit's opinion in *Egerdahl v. Hibbing Community College* particularly persuasive on this point. The court in that case recognized that Title IX is "analogous to § 1983" and is modeled after Title VI, which itself is "controlled by the same

6

considerations which inhere in . . . § 1983 claims."[5] *Egerdahl*, 72 F.3d at 618 (quoting *Chambers v. Omaha Pub. Sch. Dist.*, 536 F.2d 222, 225 n.2 (8th Cir. 1976)). The Supreme Court's reasoning in applying state personal injury limitations periods to § 1983 claims thus applies with equal force to Title IX claims, and we conclude that in accordance with *Wilson* and *Owens*, both Title IX and § 1983 should be governed by state statutes of limitations for personal injury actions.

2.  Whether to Apply Section 16.003 or 16.0045

Having determined that Title IX and § 1983 are subject to the same statute of limitations, we turn to Plaintiffs' contention that Texas's specific limitations period for sexual assault claims in Section 16.0045, rather than the general two-year limitations period in Section 16.003, applies to the claims in the present case. As noted above, *Owens* makes clear that the statute of limitations for all § 1983 claims is the relevant state's "general or residual statute for personal injury actions." 488 U.S. at 250. The court below concluded that Section 16.003, which sets out a generally applicable two-year limitations period for causes of action involving personal injury, should govern Plaintiffs' claims under *Owens*. Plaintiffs argue on appeal, however, that this conclusion required the district court to "ignore" or "strike" the language from 16.003 that specifically references Section 16.0045's longer period for claims involving sexual assault. In other words, Plaintiffs concede that the district court should have applied the "general or residual" personal injury statute under *Owens*, but they argue that because Texas's "general" statute contains a specific exception for sexual assault, the longer period in Section 16.0045 applies to

---

[5] While not binding, we have also acknowledged the similarity between Title VI and § 1983 in an unpublished opinion, recognizing that "[f]or actions brought under § 1983 and Title VI, we borrow the forum state's general personal injury limitations period, which in Texas is two years." *Griffin v. Round Rock Indep. Sch. Dist.*, 82 F.3d 414, at *1 (5th Cir. 1996) (per curiam).

Title IX and § 1983 claims stemming from sexual assault or abuse. We reject this argument, which is based on a misreading of *Owens* and a misunderstanding of the relevant inquiry.

Prior to *Wilson* and *Owens*, lower courts applied a myriad of different statutes of limitations to § 1983 claims, and the applicable statute in a given case often depended on the extent to which the particular facts underlying the claim could be analogized to a specific state-law cause of action. *Owens*, 488 U.S. at 240. The Supreme Court's decisions in *Wilson* and *Owens* reflected an effort to eliminate the "confusion and inconsistency" that had grown from this "practice of seeking state-law analogies for particular § 1983 claims." *Id.* In *Wilson*, the Court recognized the futility of seeking such analogies, noting that "[i]f the choice of the statute of limitations were to depend upon the particular facts or the precise legal theory of each claim, counsel could almost always argue . . . that two or more periods of limitation should apply to each § 1983 claim." 471 U.S. at 273–74. The inevitable result of this approach, in the Court's view, would be that "different statutes of limitations would be applied to the various § 1983 claims arising in the same State." *Id.* at 274. To avoid this result, the Court determined that all § 1983 claims should be subject to "a simple, broad characterization" as personal injury actions for limitations purposes. *Id.* at 272, 280.

While *Wilson* accordingly directed courts to apply state personal injury statutes of limitations to § 1983 claims, confusion remained as to the appropriate limitations period for § 1983 claims in states with more than one statute for personal injury actions. *Owens*, 488 U.S. at 241. Some courts applied periods assigned to "certain enumerated intentional torts," while other courts "endorsed the use of the state residuary statute of limitations." *Id.* The Supreme Court was thus compelled to clarify its holding from *Wilson*, which it did in *Owens* by recognizing that the same concerns for simplicity and

predictability that motivated *Wilson* also favored application of the "general or residual statute for personal injury actions" in situations where multiple personal injury limitations periods could apply. *Id.* at 248–50. The Court noted that some states had a "general provision which applie[d] to all personal injury actions with certain specific exceptions," while others had "a residual provision which applie[d] to all actions not specifically provided for." *Id.* at 246–47. But in either case, the Court recognized that "each State would have no more than one" residual or general limitations period, and it concluded that this single, "easily identifiable" period should govern all § 1983 claims regardless of their factual underpinnings. *Id.* at 247–48.

As the above discussion should make clear, Plaintiffs' argument that Section 16.0045's specific limitations period for sexual assault claims should apply over the general two-year period in Section 16.003 is foreclosed by *Wilson* and *Owens*. Section 16.003's two-year limitations period is the "general" personal injury period contemplated by *Owens*, and the fact that Section 16.003 explicitly references Section 16.0045 is irrelevant. As the Supreme Court noted, numerous states have "general provision[s]" for personal injury actions with "certain specific exceptions," and the Court in *Owens* clearly intended for the "general provision[s]" to govern all § 1983 claims regardless of whether any of the "specific exceptions" could arguably apply under the particular facts of the case. Thus, in urging us to analogize their federal claims to state claims involving sexual assault and apply a limitations period that is different from the "general" period in Section 16.003, Plaintiffs are asking us to employ precisely the practice that the Supreme Court rejected in *Wilson* and *Owens*. Indeed, the New York statute of limitations addressed in *Owens* stated that actions for personal injury had to be commenced within three years "except as provided in" three other enumerated sections. *Owens*, 488 U.S. at 238 n.1. This gave the Supreme Court no pause, however, in concluding that the court below

had correctly applied the three-year period "governing general personal injury actions." *Id.* at 251.

Nevertheless, Plaintiffs devote extensive briefing on this point to statutory interpretation and legislative intent, arguing that *Owens* does not countenance disregard for the plain language of a statute and the clear desire of a state legislature to give sexual assault plaintiffs more time to bring their claims. This argument, however, misapprehends the nature of a federal court's task in selecting a state limitations period for a federal claim. The Supreme Court in *Wilson* referred to the borrowing of a state limitations period as the "adopt[ion of] a local time limitation as federal law." *Wilson*, 471 U.S. at 266–67. In other words, federal courts do not apply state limitations periods as a matter of state law—rather, the absence of a federal limitations provision sometimes necessitates the "adoption" of a state limitations period as a matter of *federal* law. Thus, statutory interpretation and the intent of the Texas legislature do not affect our selection of a state limitations period for Title IX and § 1983 claims. As the Ninth Circuit has put it, "[t]he issue is not what statute of limitations the [state] legislature intended to apply to this federal action, but rather what state statute of limitations the federal claim should 'borrow'"; Plaintiffs' "lengthy statutory interpretation analysis and speculation about the intent of [state] legislators is therefore irrelevant." *Stanley*, 433 F.3d at 1135.

To summarize: *Owens* instructs us to apply the "general or residual" personal injury statute of limitations to § 1983 claims. We believe this instruction should extend to Title IX claims as well. In Texas, applying the "general or residual" personal injury statute of limitations means applying the two-year period in Section 16.003, regardless of whether the facts underlying the particular claim make an exception potentially applicable. We accordingly

conclude that the district court did not err in applying the two-year limitations period from Section 16.003 to Plaintiffs' Title IX and § 1983 claims.

## B.   *Determining When Plaintiffs' Claims Accrued*

Recognizing that the district court properly applied a two-year statute of limitations to Plaintiffs' Title IX and § 1983 claims does not end our analysis, however. We must still determine whether the district court was correct in concluding that the two-year limitations period had expired. Absent tolling, the limitations period runs from the moment a plaintiff's claim "accrues," and while we borrow the limitations period from state law, "the particular accrual date of a federal cause of action is a matter of federal law." *Frame v. City of Arlington*, 657 F.3d 215, 238 (5th Cir. 2011). The district court determined that Plaintiffs' federal claims accrued at the time A.W. knew she was being abused in 2009—thus, while the claims were tolled under Texas law until A.W. turned 18, the clock immediately began to run when she reached the age of majority in the spring of 2011. This being more than two years before the instant suit was filed, the district court concluded—after rejecting Plaintiffs' equitable tolling arguments—that the claims were barred.

Setting aside questions of equitable tolling, which we discuss below, we must determine whether the district court correctly identified the time of accrual. We have held that "[u]nder federal law, a claim accrues and 'the limitations period begins to run the moment the plaintiff becomes aware that he has suffered an injury or has sufficient information to know that he has been injured.'" *Spotts v. United States*, 613 F.3d 559, 574 (5th Cir. 2010) (quoting *Piotrowski*, 237 F.3d at 576). Plaintiffs argue that the district court erred in equating the "injury" for accrual purposes with the abuse suffered by A.W.; they contend that instead, the relevant injury should be viewed as HISD's and the School Officials' ratification of and deliberate indifference to the abuse. Plaintiffs assert that their claims thus could not have accrued until

11

they became aware of certain facts about the School Officials' conduct and HISD's policies during the pendency of Feenstra's criminal case. This being a mere six weeks before they filed the instant suit, Plaintiffs believe they were well within the limitations period. We are not persuaded.

Even if we assume that the relevant injury was the conduct of HISD and the School Officials rather than the sexual abuse itself, Plaintiffs had sufficient awareness of that conduct prior to the spring of 2011 for their claims to accrue. We have previously explained that "[a] plaintiff's awareness encompasses two elements: (1) [t]he existence of the injury; and (2) causation, that is, the connection between the injury and the defendant's actions." *Piotrowski*, 237 F.3d at 576 (citation and internal quotation marks omitted). However, "[a] plaintiff need not know that she has a legal cause of action" for her claim to accrue; "she need know only the facts that would ultimately support a claim." *Id.* Finally, "awareness" for accrual purposes does *not* mean actual knowledge; rather, all that must be shown is the existence of "circumstances [that] would lead a reasonable person to investigate further." *Id.* (citation and internal quotation marks omitted).

Applying these principles to the present case, the circumstances alleged in Plaintiffs' complaint would undoubtedly have prompted a reasonable person to investigate HISD's and the School Officials' conduct further. A.W. was sadly quite aware of the abuse she suffered, and she was also aware that her abuser was her teacher. King-White knew that A.W. was *living* with her teacher—in fact, she consented to the arrangement—and she also personally complained to the School Officials about the relationship between Feenstra and A.W. Thus, even framing the injury as the failure to stop Feenstra's abuse, rather than the abuse itself, Plaintiffs' allegations demonstrate that A.W. and King-White were both sufficiently aware of the facts that would ultimately support their claims by the time A.W. turned 18 in the spring of 2011. While they may not

have known about complaints from other parents or certain alleged HISD "policies," a reasonable person who knew that her daughter was living with a teacher, and who had already lodged complaints with administrators that had gone unheeded, would have investigated further.

Plaintiffs nonetheless believe that our opinion in *Piotrowski* supports their accrual argument. We concluded there that we could not say as a matter of law that the limitations period for a § 1983 claim against a city ran when the plaintiff was shot by a hired criminal, because particular facts about the police department's collusion with the criminal may not have been available to the plaintiff until later. *Piotrowski*, 237 F.3d at 577. *Piotrowski* is eminently distinguishable, however. The plaintiff's claim in that case was based on a city's "affirmative involvement in [a] contract on [the plaintiff's] life," and we noted that the plaintiff could not have known "that the City, as opposed to individual officers, had actively protected and/or assisted" the criminal at the time she was shot. *Id.* In contrast, Plaintiffs here were at all times aware of the connection between Feenstra, HISD, and the School Officials, and King-White knew at the very least that her complaints about Feenstra to School Officials had not been addressed. Indeed, Plaintiffs' complaint makes clear that both Plaintiffs knew Feenstra was a teacher employed by HISD, and the complaint repeatedly reiterates the close connection between Feenstra's actions and HISD. This case is thus distinct from *Piotrowski*, and Plaintiffs' argument to the contrary is unavailing.

Plaintiffs also urge us to adopt a "delayed accrual" rule with respect to HISD, because the claims against HISD are necessarily based on official "policies or customs" that could not have been known at the time of Feenstra's abuse. Plaintiffs rely for this argument on caselaw from the Second Circuit, which stated in *Pinaud v. County of Suffolk* that § 1983 claims against counties or municipalities, because they require the existence of an official policy or

custom, do not "necessarily accrue upon the occurrence of a harmful act, but only later when it is clear, or should be clear, that the harmful act is the consequence of" that policy or custom. 52 F.3d 1139, 1157 (2d Cir. 1995). However, the Second Circuit more recently undercut the force of that opinion in an unpublished decision, where a different panel referred to the discussion from *Pinaud* as "demonstrably dictum" and "decline[d] to eviscerate" the ordinary accrual rule "by holding that the limitations period for a cause of action against a municipality runs anew upon the future discovery of facts tangentially related to" the claim. *Lawson v. Rochester City Sch. Dist.*, 446 F. App'x 327, 329 (2d Cir. 2011) (citation omitted); *see also Tengood v. City of Philadelphia*, 529 F. App'x 204, 210 & n.5 (3d Cir. 2013) (finding the argument that the circuit should adopt *Pinaud*'s "dicta" waived and noting that "[t]here is also no basis in our precedent for applying such a 'delayed accrual' theory"). We likewise decline to change our well-settled accrual rules based on dicta from the Second Circuit's *Pinaud* opinion. As such, we apply the ordinary rules discussed above and conclude that Plaintiffs' claims accrued by the time A.W. turned 18 in the spring of 2011. Because this was more than two years before Plaintiffs filed suit, Plaintiffs' Title IX and § 1983 claims are time-barred unless equitable tolling principles apply.

*C. Determining Whether Equitable Tolling Principles Apply*

Plaintiffs' final argument with respect to timeliness is that even if the applicable statute of limitations would otherwise bar their claims against HISD and the School Officials, the district court should have applied certain equitable tolling principles, including fraudulent concealment and the discovery rule, to forestall the expiration of the limitations period. The record before us, however, dispels any notion that the equitable principles identified by Plaintiffs would be available to save their claims.

No. 14-20778

When a federal cause of action borrows a state statute of limitations, "coordinate tolling rules" are usually borrowed as well. *Hardin v. Straub*, 490 U.S. 536, 539 (1989) (quoting *Bd. of Regents of the Univ. of N.Y. v. Tomanio*, 446 U.S. 478, 484 (1980)). We have accordingly recognized that state equitable tolling principles control in § 1983 cases. *Rotella v. Pederson*, 144 F.3d 892, 897 (5th Cir. 1998). This includes tolling based on fraudulent concealment and the "discovery rule." *See id.* at 896–97.

Under Texas law, the "discovery rule" provides a "very limited exception to statutes of limitations." *Computer Assocs. Int'l, Inc., v. Altai, Inc.*, 918 S.W.2d 453, 455 (Tex. 1996), *superseded by statute as stated in Baker Hughes, Inc. v. Keco R. & D., Inc.*, 12 S.W.3d 1, 3 (Tex. 1999). While accrual of a Texas personal injury action generally occurs when "a wrongful act causes an injury, regardless of when the plaintiff learns of that injury," the "judicially-crafted" discovery rule defers accrual of the cause of action if "the nature of the injury incurred is inherently undiscoverable and the evidence of injury is objectively verifiable." *Childs v. Haussecker*, 974 S.W.2d 31, 36–37 (Tex. 1998) (citation and quotation marks omitted). In such a circumstance, the cause of action does not accrue until the plaintiff knows or reasonably should have known of the injury. *Id.* at 37. In the present case, it is unclear from the briefing whether Plaintiffs are arguing for application of Texas's discovery rule or some form of federal discovery rule. Indeed, their discussion of the discovery rule appears to be almost indistinguishable from the accrual argument already addressed in this opinion. The reason may be that the accrual rule applicable to the claims in this case is, essentially, a "discovery" rule. In other words, to the extent Plaintiffs are arguing that the limitations clock should not have run until they discovered or should have discovered their injuries, they are arguing for application of the federal accrual rule that we already apply. In any event, Plaintiffs' allegations are insufficient to show that their injury was "inherently

15

undiscoverable" as a matter of state law, and their discovery rule argument thus fails.

Plaintiffs' fraudulent concealment argument is unavailing for similar reasons. In Texas, defendants are estopped from relying on limitations if they are "under a duty to make disclosure but fraudulently conceal[] the existence of a cause of action from the party to whom it belongs." *Borderlon v. Peck*, 661 S.W.2d 907, 908 (Tex. 1983). "The estoppel effect of fraudulent concealment ends," however, "when a party learns of facts, conditions, or circumstances which would cause a reasonably prudent person to make inquiry, which, if pursued, would lead to discovery of the concealed cause of action." *Id.* at 909. Here, nothing in Plaintiffs' complaint suggests that HISD or School Officials actively concealed the existence of any causes of action—rather, Plaintiffs' allegations focus on the School Officials' failure to act in the face of knowledge of abuse. Additionally, for the same reasons that we have already concluded Plaintiffs' claims accrued by the spring of 2011, Plaintiffs had sufficient knowledge of the relevant facts by that time to end any "estoppel effect" that would otherwise apply. Thus, fraudulent concealment is of no help to Plaintiffs.

## IV. CONCLUSION

Because Plaintiffs' Title IX and § 1983 claims accrued more than two years prior to their filing suit and the equitable tolling principles they have identified do not apply, we conclude that the claims are time-barred. We thus need not reach the remaining issues raised on appeal, and we AFFIRM the ruling of the district court.